United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 9, 2005**

Charles R. Fulbruge III
Clerk

REVISED JUNE 13, 2005

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————————————

No. 04-30213

———————————————

BERNELL JULUKE, JR.,

Plaintiff - Appellant,

versus

BURL CAIN, WARDEN, LOUISIANA STATE PENITENTIARY,

Respondent - Appellee.

————————————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 02-CV-3582

————————————————————————

Before GARWOOD, SMITH, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Bernell J. Juluke, Jr., was convicted of second-degree murder and sentenced to life

imprisonment. He appeals from the district court's order denying his application for 28 U.S.C. §

2254 relief, in which he challenged his state murder conviction. The district court granted Juluke a

certificate of appealability ("COA") on the three issues Juluke pursues before this Court: that the

———————————————————

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

State withheld exculpatory evidence in the form of police communication logs and a police incident report; that a witness's identification of Juluke should have been suppressed; and that the evidence was insufficient to support his conviction. Finding no error, we affirm the judgment of the district court.

## I. FACTS AND PROCEEDINGS

On August 22, 1994, Rondell Santinac died while sitting in a car in the driveway of 3303 Desire Parkway, New Orleans, at approximately 9:20 or 9:30 p.m., in a hail of bullets fired by two men wielding AK-47s from the passenger-side windows of a grey Chevrolet Baretta. Santinac's cousin, Samuel Raeford, jumped out of Santinac's car and ran into his mother-in-law's house. Detective Wayne Tamborella arrived on the scene and spoke with Raeford. Raeford provided a description of the car, (though he called it a blue Baretta), and identified the perpetrators as Juluke and his two codefendants, Kunta Gable and Leroy Nelson. Raeford knew the three men from the Iberville Project, where Raeford's brother lived.

New Orleans Police Officer Tommy Felix received a dispatch containing a description of this car and stopped it in the Iberville Housing Project. Juluke was the driver, Gable was the front seat passenger, and Nelson was the rear seat passenger. Juluke, also known as Bernell Mays, nervously changed his last name after hearing a followup report about the Santinac shooting from the police dispatcher over the patrol unit's radio. Officer Felix wrote Juluke a citation for running a red light and not having a driver's license at 9:45 p.m., although he made the stop perhaps as early as 9:30 or 9:35 p.m. All three defendants were taken into custody. A search of the vehicle failed to find any physical evidence linking the defendants to the shooting.

Raeford was transported to the Homicide Office where he identified the three defendants.

2

The defense challenged much of Raeford's testimony. Raeford admitted that he had not gotten a good look at the third man in the car and had only assumed that Juluke had been at the wheel because he had seen the group earlier that night in the Iberville Project and the police had stopped all three men in the Baretta near the Project within fifteen minutes of the shooting.

Several defense witnesses testified that Raeford had made statements exonerating Juluke, Gable, and Nelson. On cross-examination, Raeford admitted that the Beretta was actually grey instead of blue but denied telling three defense witnesses that Juluke, Gable, and Nelson were not guilty.

On December 20, 1994, the three defendants were charged by grand jury indictment with first degree murder. The trial court denied the defendants' motions to suppress a statement and identification. Following trial, the jury on March 1, 1996 found the defendants guilty of second degree murder and they were sentenced to life imprisonment.

Juluke appealed his conviction, asserting a number of errors. The Louisiana Court of Appeal determined that the evidence was insufficient to support Juluke's conviction and reversed the conviction without addressing Juluke's remaining assignments of error. *State v. Gable*, No. 96-KA-1920, 704 So.2d 995 (La. App. 4th Cir. Jan. 21 1998). The State appealed; the Supreme Court of Louisiana determined that the evidence was sufficient to support the conviction and reversed the Court of Appeal to reinstate the conviction. *State v. Juluke*, 725 So. 2d 1291 (La. 1999) (finding that the Court of Appeal impermissibly "substituted its judgment for the jury's as to what the evidence did or did not prove on the basis of a hypothetical set of facts not argued to jurors"). On remand, the Court of Appeal rejected Juluke's remaining assignments of error and affirmed the conviction. *State v. Juluke*, 735 So.2d 142 (La. Ct. App. 1999). The Louisiana Supreme Court shortly thereafter

denied Juluke's application for rehearing. *State v. Juluke*, No. 98-K-0341 (La. Feb. 12, 1999). Juluke then filed an application for rehearing with the Louisiana Court of Appeal. The court granted his application and affirmed his conviction. *State v. Juluke*, No. 96-KA-1920 (La. Ct. App. Apr. 30, 1999). The Louisiana Supreme Court denied writs. *State v. Juluke*, 748 So.2d 466 (La. 1999).

Juluke then sought postconviction relief in state court. Juluke contended, *inter alia*, that the timeline in communications logs and a police report which were unknown to him at the time of his trial indicated his innocence; that counsel was ineffective for failing to obtain the logs and report; and that the State suppressed exculpatory evidence in the form of the logs and report. The state district judge denied relief, *State v. Juluke*, No. 372-656 (Orleans Parish Crim. Dist. Ct. July 23, 2001), and the Louisiana Court of Appeal and Louisiana Supreme Court denied writs. *Juluke v. Burl Cain*, No. 2001-K01765 (La. Ct. App. Nov. 8, 2001); *State v. Juluke*, 825 So.2d 1190 (La. 2002).

Juluke, represented by counsel, applied for 28 U.S.C. § 2254 habeas corpus relief in the district court. Juluke contended, *inter alia*, that the State withheld exculpatory evidence; that Raeford's identification of him was the result of suggestive police procedures; that impermissible reference was made to a police broadcast containing hearsay of Officers Davis and Williams that suggested that Raeford identified the color of t he car; that his counsel was not present during the suppression hearing; that the evidence suggested that somebody other than Raeford led police to target a blue car; that Juluke's name was not broadcast during a police interview of Juluke, leading Juluke to change his name; and that there was insufficient evidence of guilt.

On January 26, 2004, the district court determined that Juluke's contentions were unavailing on the merits and denied Juluke habeas corpus relief. Juluke, proceeding *pro se*, filed a motion for a COA that served as a timely notice of appeal. On March 8, 2004, the district court granted Juluke's

4

COA motion on the three issues discussed below.

## II. STANDARD OF REVIEW

We review the district court's findings of fact for clear error, and its legal conclusions *de novo*. *Mosley v. Dretke*, 370 F.3d 467, 472 (5th Cir. 2004). Because Juluke filed his habeas petition after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 (2000), this statutory scheme governs our review. *Penry v. Johnson*, 532 U.S. 782, 792 (2001). AEDPA dictates that this Court will not overturn a state court's adjudication unless its resulting decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (2000); *see also Pondexter v. Dretke*, 346 F.3d 142, 145–46 (5th Cir. 2003) ("A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts.")

## III. DISCUSSION

A.    Brady Violation

Juluke contends that the State violated *Brady v. Maryland*, 373 U.S. 83, 87 (1963), by failing to disclose the initial police report prepared by NOPD Officers Len Davis and Sammie Williams, who responded to the scene of the incident, and the logs of police communications at the time he was stopped. The police report indicated that Davis and Williams responded to a police dispatcher's call at 9:20 p.m. and that they located a witness who was detained until homicide detectives could

5

interview him. Davis and Williams did not list any suspects in their report. Detective Tamborella and Lieutenant Bennelli arrived on the scene during the period covered by the report. The communication log for Davis's and Williams's car indicated that the shooting was reported at 9:22 p.m. and that the officers arrived at 9:24. At 9:25, the perpetrator was reported to be a black male in a Beretta. At 9:27, and again at 9:30, the perpetrator was described as one Pernell Maze (as opposed to Bernell Mays). A Beretta was mentioned at 9:42 p.m., and was described as being occupied by three individuals, one of whom was armed with an AK-47. A communication log for police car no. 180 indicated that Officer Felix, in car no. 103, was dispatched at 9:45 p.m. and that he arrived at the intersection of Prieur and Bienville at 9:47.

Juluke argues that had he possessed those documents, he could have built a case against other possible perpetrators, including Pernell Maze, Russell Spurlock, the owner of the car, or the notorious Officers Davis and Williams.[1] Juluke also contends that he could have impeached Detective Tamborella, Officer Felix, and Raeford because the logs and report would have shown that Raeford did not identify him as a perpetrator. Moreover, the logs and report would have shown that Officers Davis and Williams interviewed Raeford and that they submitted the information that Bernell Mays was a perpetrator over their car radio.

The state must disclose exculpatory evidence that is material to guilt or punishment. *Id.* To establish a *Brady* violation, the habeas applicant must show that the prosecution suppressed evidence

---

[1] Davis and Williams gained notoriety in New Orleans as corrupt police officers. Davis was convicted of various offenses after orchestrating the murder of a citizen who filed a complaint against him with the Internal Affairs Division of the New Orleans Police Department. *United States v. Causey*, 185 F.3d 407, 411 (5th Cir. 1999). Additionally, Davis and Williams, along with other police officers, extorted money from a crack cocaine dealer. *United States v. Duncan*, 191 F.3d 569, 571 (5th Cir. 1999).

favorable to the accused and material to either guilt or punishment. *Id.*; *Cordova v. Collins*, 953 F.2d 167, 171 (5th Cir. 1992). Suppressed evidence is material under *Brady* when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

The State argues, and the district court so found, that the record demonstrates that it provided the incident report to defense counsel and notes that Juluke has the burden of establishing that the State failed to produce the report. However, even if it is assumed that the State suppressed the logs and the report, Juluke has failed to demonstrate that they were material to either guilt or punishment. The report indicated that Raeford did not identify Juluke to Officers Davis and Williams; however, the logs suggested that Raeford identified Juluke to someone by 9:27 p.m. at the latest. The logs did not identify the recipient of Raeford's information, and the report indicated that other police officers arrived on the scene. The report and logs do not support the proposition that there was no radio broadcast to Officer Felix's car—the log relevant to his actions came from another car and therefore would not have reflected all of his radio communications. Finally, the logs and the testimony at the suppression hearing indicated that Raeford identified Juluke as a perpetrator shortly after the shooting; while his testimony at trial that he could not identify Juluke as a perpetrator might have undermined his credibility as a witness, it did not prove that he did not previously name Juluke as a perpetrator. Nothing in the logs or report was material to Juluke's guilt or innocence. The Louisiana Supreme Court was not unreasonable in rejecting this claim.

B.    Suppression of Identification

Juluke next argues that police testimony about Raeford's identification of him and Raeford's testimony that he identified Juluke should have been excluded. First, Juluke contends that Raeford's

7

identification of Juluke was impermissibly suggestive because the officers informed Raeford that Juluke had been apprehended in the same car with Gable and Nelson.[2]  Second, Juluke argues that while testifying, Raeford did not make clear that he could not identify Juluke at the scene and only stated that he was in the car because the police told him he was caught with Gable and Nelson. Moreover, Juluke alleges, the prosecutor referred to the police broadcast during his closing argument to suggest that Raeford's on-the-scene identification was the motive for Juluke to change the name he gave the police.

The use at trial of unreliable identification evidence obtained by police through unnecessarily suggestive procedures violates a defendant's right to due process. *Neil v. Biggers*, 409 U.S. 188, 198 (1972).  An identification procedure violates due process when it is "'unnecessarily suggestive and conducive to irreparable mistaken identification.'"  *United States v. Atkins*, 698 F.2d 711, 713 (5th Cir. 1983) (quoting *Stovall v. Denno*, 388 U.S. 293, 302 (1967)).

It is not clear from the record whether Raeford was told that the suspects had been apprehended together before or after he identified Juluke.  However, even if the identification was unduly suggestive, its admission would amount to a trial error rather than a structural error. *Watkins v. Sowders*, 449 U.S. 341, 348 (1981).  Such trial errors are subject on habeas review to harmless error analysis under *Brecht v. Abrahamson*, which permits relief only upon a showing that a particular constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict."  507 U.S. 619, 623 (1993).

---

[2]  During the suppression hearing Raeford testified that all three defendants were presented for identification together.  At trial, however, he stated that he viewed them individually.  Detective Anthony Small and Tamborella testified at trial that the defendants were led into a room one by one for Raeford to identify.   On appeal, Juluke does not argue that the three defendants were viewed simultaneously.

Raeford's testimony clarified for the jury that his identification of Juluke that night, both at the scene and during the line-up, was not based on any sighting of him in the car that night during the shooting. Thus, the jury was aware that Raeford identified Juluke based on circumstantial evidence (whether because the line-up was suggestive or because he saw the three defendants together earlier on the day in question) rather than an eye-witness sighting.

Additionally, the jury's verdict was not at all dependent on Raeford's identification of the driver of the vehicle at the time of the shooting. Most notably, Juluke was sighted with Gable and Nelson both before and right after the incident, in a car matching the description of the vehicle in the question. Juluke did not assert a defense that Gable and Nelson had had another driver during the shooting and that he had joined them in the vehicle after the shooting. Rather, Juluke argued that Raeford's failure to identify him supported a larger alibi theory that all three defendants were innocent. The fact that Raeford surmised, rather than saw, that Juluke was the third party in the Beretta with Gable and Nelson, cannot be considered as having a substantial and injurious effect on Juluke's guilty verdict.

C.    Sufficiency of Evidence

Juluke contends that the evidence was insufficient to support his conviction. A reviewing court will not disturb a state court jury verdict so long as the evidence, viewed in the light most favorable to the verdict, is sufficient to allow a reasonable jury to find the defendant guilty beyond a reasonable doubt. *Young v. Guste*, 849 F.2d 970, 972 (5th Cir. 1988); *Jackson v. Virginia*, 442 U.S. 307, 318–19 (1979). It is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 442 U.S. at 319. Thus, we do not "not focus on whether the trier of fact made the correct guilt or

9

innocence determination, but rather whether it made a rational decision to convict or acquit."
*Herrera v. Collins*, 506 U.S. 390, 402 (1993).

Under Louisiana law, second-degree murder is defined as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. LA. REV. STAT. ANN. § 14:30.1 (West supp. 2004). Under the law of principals, "[a]ll persons concerned in the commission of a crime . . . whether they directly commit the act constituting the offense, aid and abet its commission, or directly or indirectly counsel or procure another to commit the crime, are principals." LA. REV. STAT. ANN. § 14:24 (West 1997). However, "[t]he mental state of one defendant may not be imputed to another defendant," rather, "it is necessary that the principal actually be aware of the accomplice's intention." *State v. Hayes*, 806 So. 2d 816, 823–24 (La. Ct. App. 2001) (quotations and citations omitted).

Viewing the evidence in the light most favorable to the prosecution, the Louisiana Supreme Court was not unreasonable to find that sufficient evidence supported the guilty verdict. The evidence indicated that Juluke was with Gable and Nelson during the confrontation with Carter; that Gable and Nelson shot Santinac with AK-47s; that a third person drove the Beretta; that Juluke, Gable, and Nelson were together in the Beretta when it was stopped shortly after the shooting; and that Juluke was driving the Beretta when it was stopped. The jury could have inferred that Juluke drove the Beretta when Gable and Nelson shot Santinac. The jury could have inferred that Juluke shared an intention to kill or cause great bodily harm because Gable and Nelson were armed with AK-47s, Juluke drove the car away from the scene of the shooting, and Juluke changed his name when he heard his name broadcast on the police radio. Finally, the jury need not have believed Juluke's alibi defense.

10

## IV. CONCLUSION

Because the district court correctly determined that the state court's decision is not contrary to, and does not involve an unreasonable application of, clearly established federal law on any of the issues Juluke raises on appeal, the judgment of the district court is AFFIRMED.